UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
HERMAN SAHAN,                             :
                                          :   Case No.: _____
         Plaintiff,                       :
                                          :   **DEMAND FOR JURY TRIAL**
     -against-                            :
                                          :
TETRAPHASE PHARMACEUTICALS, INC.,         :
L. PATRICK GAGE, GAREN BOHLIN,            :
JEFFREY A. CHODAKEWITZ, JOHN G.           :
FREUND, GERRI HENWOOD, GUY                :
MACDONALD, and NANCY J. WYSENSKI,         :
                                          :
         Defendants.                      :
----------------------------------------- X

## COMPLAINT

Plaintiff, Herman Sahan ("Plaintiff") by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.  This is an action brought by Plaintiff against Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Tetraphase, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.  Plaintiff's claims arise in connection with the proposed

acquisition of Tetraphase by AcelRx Pharmaceuticals, Inc. ("AcelRx") and Consolidation Merger Sub, Inc., an indirect wholly owned subsidiary of the AcelRx ("Merger Sub") (the "Proposed Transaction").

2.      On March 15, 2020, Tetraphase entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub will be merged with and into the Company, with the Company surviving as a direct, wholly-owned subsidiary of AcelRx (the "Merger").

3.      Upon consummation of the Merger, each share of Tetraphase common stock will be converted into the right to receive 0.6303 of AcelRx common stock for each Tetraphase common stock owned. (the "Merger Consideration").

4.      On April 6, 2020, in order to convince Tetraphase's public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections for Tetraphase; and (ii) analyses performed by the Company's financial advisor, Janney Montgomery Scott LLC ("Janney").

6.      The special meeting of Tetraphase shareholders to vote on the Proposed Merger has not been scheduled but it is forthcoming because the Proposed Transaction is expected to close in the second quarter of 2020 (the "Shareholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote, so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, and

breach of the duty of candor/disclosure.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tetraphase's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District. Indeed, Tetraphase's common stock trades on the Nasdaq Global Select Market ("NasdaqGS"), which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

12. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Tetraphase common stock.

13. Defendant Tetraphase is a public company incorporated under the laws of Delaware with principal executive offices located at 480 Arsenal Way, Watertown, MA 02472. Tetraphase's common stock is traded on the NasdaqGS under the ticker symbol "TTPH."

14. Defendant L. Patrick Gage is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15. Defendant Guy Macdonald is, and has been at all relevant times, a director of the Company and Chief Executive Officer.

16. Defendant Garen Bohlin is, and has been at all relevant times, a director of the Company.

17. Defendant Jeffrey Chodakewitz is, and has been at all relevant times, a director of the Company.

18. Defendant John G. Freund is, and has been at all relevant times, a director of the Company.

19. Defendant Gerri Henwood is, and has been at all relevant times, a director of the Company.

20. Defendant Nancy J. Wysenski is, and has been at all relevant times, a director of the Company.

21. The Defendants identified in paragraphs 14 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Tetraphase, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22. Tetraphase Pharmaceuticals, Inc. is a biopharmaceutical company that develops a variety of antibiotics that treat serious and life-threatening multidrug-resistant infections. The company's lead product is Xerava which is a synthetic fluorocycline intravenous and IV antibiotic for use as a first-line monotherapy treatment to multidrug resistant infections.

23. On March 16, 2020, the Board caused the Company to enter into the Merger Agreement with Buyer, whereby, each share of Tetraphase common stock will be converted into the right to receive 0.6303 of AcelRx common stock for each Tetraphase common stock owned.

24. According to the March 16, 2020, press release announcing the Proposed Transaction:

**Tetraphase Pharmaceuticals and AcelRx Pharmaceuticals Enter into Definitive Merger Agreement**

AcelRx to Acquire Tetraphase in an all-stock transaction

Tetraphase equity holders to own 14.6% of the combined company and receive Contingent Value Rights worth up to $12.5 Million

Acquisition Expected to Close in Q2 2020

Companies Enter into a Co-Promotion Agreement

**WATERTOWN, Mass., March 16, 2020** – Tetraphase Pharmaceuticals, Inc. (Nasdaq: TTPH), a biopharmaceutical company focused on commercializing its novel tetracycline XERAVA to treat serious and life-threatening infections, today announced the execution of a definitive merger agreement pursuant to which AcelRx Pharmaceuticals (Nasdaq: ACRX) would acquire Tetraphase

in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders will receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right (CVR), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The transaction was unanimously approved by both the AcelRx and Tetraphase boards of directors and is expected to close in the second quarter of 2020. Select Tetraphase stockholders and warrant holders, including Armistice Capital, LLC, holding in the aggregate approximately 31% of Tetraphase's outstanding common stock, have signed voting agreements in favor of the transaction.

Concurrently with signing the merger agreement, Tetraphase and AcelRx entered into a co-promotion agreement to market and promote XERAVA™ for the treatment of complicated intra-abdominal infections (cIAI) and DSUVIA® for the treatment of acute pain in medically supervised settings. The co-promotion agreement will allow the AcelRx and Tetraphase teams to benefit immediately from the promotion of multiple products, leverage each company's customer relationships, and create efficiencies among commercial teams. The combined sales team will cover in excess of 70% of each company's originally targeted hospitals.

"This transaction is an important move forward for Tetraphase and more importantly, for XERAVA and the patients who need this treatment," said Larry Edwards, President and Chief Executive Officer of Tetraphase. "We are excited to collaborate with AcelRx, a partner whose strategic goals complement our own. We continue to believe that XERAVA is a key addition to the hospital anti-infective armamentarium, and believe that together with AcelRx we will be able to more effectively bring new treatments to patients in healthcare institutions."

(Emphasis in original).

**The Registration Statement Omits Material Information**

25.     On April 6, 2020, Defendants filed a materially incomplete and misleading Registration Statement with the SEC.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement omits material information that is necessary for the Company's shareholders to cast an informed vote in connection with the Proposed Transaction.

26.     First, the Registration Statement discloses the line items used to calculate Unlevered Free Cash Flow as EBIT plus depreciation and other non-cash adjustments minus capital expenditures and a change in working capital. However, it fails to disclose the line items used to calculate Unlevered Free Cash Flow other than EBIT. Further, the Registration Statement

discloses that Unlevered Free Cash Flow, excludes potential impact of net operating losses and that stock-based compensation expense is not treated as a cash expense, however, neither metric is disclosed.

27.     Defendants' failure to disclose all line items used to calculate Tetraphase's Unlevered Free Cash Flow renders the Registration Statement materially misleading. Registration Statement, 77.

28.     If a Registration Statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  Regarding future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the Company's projections relied upon by Janney Montgomery Scott LLC ("Janney"), but have omitted crucial line items and reconciliations.  Thus, Defendants' omissions render the projections disclosed on page 77 of the Proxy misleading.

29.     Second, the Proxy omits material information regarding the financial analyses conducted by Janney.

30.     With respect to Janney's *Tetraphase Discounted Cash Flow Analysis*, the Registration Statement  is materially misleading and incomplete because it fails to disclose (i) the rationale for using a 2024 Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x, and (ii) the inputs and assumptions for selecting of discount rates of 17.6% to 21.6%. *Id.* at 70.

31.     These key inputs are material to Tetraphase's shareholders, and there omission renders the summary of Janney's *Tetraphase Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, the Company's shareholders cannot evaluate for themselves the reliability of Janney's *Tetraphase Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of Tetraphase or was the result of an unreasonable judgment by Janney, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

32.     With respect to Janney's *Precedent Transaction Analysis,* the Registration Statement fails to disclose the individual multiples observed for each transaction.

33. With respect to Janney's *Premium Paid Analysis,* the Registration Statement fails to disclose; (i) the premiums paid for each transaction and (ii) the basis of selecting the 30 healthcare transactions with an enterprise value of less than $500 Million.

34. Defendants' failure to provide the foregoing material information renders the statements in the Registration Statement false and/or materially misleading.

35. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement  or

consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement , which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company; (ii) the valuation analyses performed by Janney in support of its fairness opinion; and (iii) the confidentiality agreement entered into by Tetraphase.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement , but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

42. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Janney reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Janney, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Janney' analyses in connection with their receipt of the fairness opinions, question Janney as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration

Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

44. Tetraphase is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

45. The misrepresentations and omissions in the Registration Statement are material and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tetraphase, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

56. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

57. The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 16, 2020

**MONTEVERDE & ASSOCIATES PC**

By:   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*